IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES B. CLARKE     Plaintiff,  v.  L3HARRIS TECHNOLOGIES, INC.     Defendant. | ) ) ) CIVIL ACTION NO. ) <u>6:21-CV-06497</u> ) ) ) <u>COMPLA I NT</u> ) ) <u>JURY TRIAL DEMAND</u> ) ) |

## NATURE OF THE ACTION

On behalf of Plaintiff JAMES B. CLARKE, (referred to hereinafter as "Plaintiff" or "James Clarke"), for his complaint against L3Harris Technologies, Inc. (referred to hereinafter as "Defendant" or "Employer" or "L3Harris") states and alleges as follows:

### Jurisdiction and Venue

1. This action is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), and 29 U.S.C. § 621, et seq. as well as Title VII of the Civil Rights Act of 1964, as amended.

2. This Court has original jurisdiction over this action, and each count, pursuant to 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination by Defendant in Rochester, NY, and in Monroe County,

New York, within the Western District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed two charges of discrimination with the New York State Division of Human Rights, ("NYSDHR") Case Numbers 10209177 and 10210269, both of which were dual-filed with the United States Equal Employment Opportunity Commission, ("EEOC") with Federal Charge Numbers as follows: 16GC003871 and 16GC100610; the first charge alleging age discrimination and second alleging retaliation.

5. Plaintiff files the instant Complaint within 90 days from his receipt of the "Right To Sue" Letters the first of which is dated April 28, 2021 and the second dated June 10, 2021. (See Right To Sue Letters, attached hereto as Exhibit "**A**" and "**B**").

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

7. The employment practices complained of herein were intentional and malicious in nature.

## PARTIES

8. Plaintiff, James Clarke is a male resident of Rochester, New York in Monroe County, and was at all relevant times hereto, an employee of Defendant L3 Harris, at Defendant's facility located in Rochester, New York, during which he was over the age of 40 at all times relevant hereto.

9. Defendant, L3Harris Technologies, Inc. is an international aerospace, communications and information technology company, serving government and commercial

customers globally, with its Communications Systems business segment headquartered in Rochester, NY, where it employed Plaintiff at times relevant to this Complaint.

10. Defendant conducted its business in Rochester, in the State of New York, where it was operating within the jurisdiction of the Western District of New York, and where it has continuously had at least 15 employees and in which Defendant has continuously been an employer engaged in an industry affecting commerce.

## STATEMENT OF CLAIMS

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

12. Defendant has engaged in unlawful employment practices in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") insofar as he was mistreated and subjected to adverse employment action during his employment with L3Harris under circumstances which strongly and directly infer age discrimination in violation of the ADEA.

13. More specifically, Plaintiff was discriminated against on the basis of age (Plaintiff was born in 1963) beginning on the very day he commenced working for L3Harris as a "Manufacturing Technician C", which was November 11, 2018.

14. Defendant refused to provide Plaintiff with the necessary equipment to conduct testing of power amplifiers despite that he was required to conduct said testing and notwithstanding that the younger counterparts who were similarly situated were provided the necessary and proper equipment to do their jobs.

15. Defendant subjected Plaintiff to what he describes as "road blocks to success" which hindered his progress and performance from the start of his career at L3Harris.

16. As another example of "road blocks to success", Defendant, by and through employees of L3Harris, refused to provide Plaintiff with what are called "Soldering Certificates"

so that he could move his work product in a timely manner, while all other similarly situated Technicians, all of whom were younger than Plaintiff – were provided with said Certificates such that they were not impeded from having their work product processed in a timely manner.

17. While younger Techs were routinely able to assemble their work for testing, from the start of his career until June of 2020, Defendant, usually through Mike Shanley, Plaintiff's Department Supervisor - intentionally deprived Plaintiff of the necessary tools to assemble his work to production specification – despite repeatedly asking Rick Prest of Human Resources for said tools.

18. Despite having intentionally deprived Plaintiff of the tools necessary to do his work in a timely manner, Defendant disciplined Plaintiff via "Reprimand" for the additional time it took him to assemble his work product in a ruse designed to make Plaintiff – an older employee over the age of 40 – appear to be inept and unable to successfully do his job.

19. Notably, Plaintiff complained about each of the above roadblocks to Brian McNamara, Supervisor of Human Resources – to no avail inasmuch as the roadblocks continued to be put in Plaintiff's path in a clearly intentional effort on the part of Defendant, by and through Shanley – to sabotage Plaintiff's success at L3Harris.

20. Defendant sabotaged Plaintiff's ability to assemble his work product in a timely manner insofar as Plaintiff's inability to properly test his work-product before moving on to the next assembly-related task was delayed by Defendant's interference in Plaintiff's work.

21. Defendant did not interfere with the ability of younger techs to properly test their work product and assembly repairs thus allowing an obvious advantage over Plaintiff.

22. Making matters worse, not only did Defendant impede Plaintiff's ability to test his work-product and repairs, but it blamed Plaintiff by unfairly alleging he failed to adequately

"troubleshoot" thus subjecting him to yet more adverse employment action.

23. Approximately 90 days prior to his termination from employment, Plaintiff was placed on a "Performance Improvement Plan" ("PIP") by Defendant for the foregoing incidents, despite having done what he was hired to do in as competent a manner as he could, with the tools he was provided.

24. At meetings with Human Resources to discuss Plaintiff's progress with his PIP, Plaintiff would routinely complain about the disparate treatment he was experiencing as compared to the more favorable treatment of his younger counterparts; to no avail; Defendant shifted the blame to Plaintiff for delays with testing and with the timeliness of his production time.

25. Defendant told Plaintiff at the foregoing HR meetings that he was "making excuses" when he informed Defendant that he lacked the necessary tools to do his job.

26. Defendant blamed Plaintiff for production delays in a manner so disingenuous as to strongly infer intent since Defendant was making it literally impossible for Plaintiff to do his job by, for example, refusing to give him the tools necessary to do his job.

27. In about May of 2019, Plaintiff was assigned to help in "Pioneer Focus Factory" on a product, during which he had no issues with performing his duties, and for a time, was not impeded from doing his job, and was therefore able to successfully perform his tasks.

28. In September of 2019, Defendant assigned Plaintiff to "Vigilance", another work area, during which Defendant began to manufacture bogus performance allegations against Plaintiff in a continued attempt to create a disciplinary paper trail on Plaintiff.

29. In or about May of 2020, Plaintiff filed an Ethics Complaint against Defendant complaining about – on information and belief - the foregoing examples of disparate treatment,

unfair discipline and targeting of his performance.

30. Despite full cooperation from Plaintiff during the Ethics "Investigation", during which he provided documentation to back up his claims of disparate treatment, a couple of months after filing, the Investigation resulted in Plaintiff's claims being "unverified".

31. Two weeks after the end of the Ethics Investigation, in which Plaintiff had complained – on information and belief - about unequal and discriminatory treatment, is when Defendant put Plaintiff on his PIP, suggesting that the PIP was retaliatory in nature.

32. There was temporal proximity between Plaintiff's Ethics Complaint and the PIP Defendant put Plaintiff on, suggesting a correlation between Plaintiff's complaints of discrimination in the workplace and Defendant's disciplining Plaintiff.

33. Defendant informed Plaintiff at the time the PIP was handed down that Plaintiff would be fired at the end of the PIP if he did not make progress.

34. Following being placed on a PIP, Defendant made Plaintiff record his production numbers on an Excel Spreadsheet despite that Plaintiff's younger counterparts were not required to do so.

35. Despite performing to the best of his ability and competently during his PIP, Defendant continued to demean Plaintiff's work and to blame him for failures that were not his fault; strongly suggesting that Plaintiff had no control over his fate at L3Harris and that his termination was preconceived following the PIP.

36. It was literally impossible for Plaintiff to satisfy the strictures of the PIP.

37. Plaintiff filed his first Complaint of Discrimination and Retaliation against Defendant in the NYSDHR on or about September 8 of 2020.

38. Defendant then retaliated against Plaintiff again.

39. More specifically, on or about September 22, 2020, at approximately 10 AM, Barbara Paige, who is a tester of equipment that C Technicians like Plaintiff have repaired, was throwing Heat Sinks on Plaintiff's work bench in an intimidating manner.

40. She would routinely make unsolicited written comments about Plaintiff's work such as "do you even know what you are doing?" as she was testing Plaintiff's work.

41. Barbara Paige would make these comments in a computer database of repairs on the Heat Sinks made by C Techs for all to see, and the rest of the company had access to these comments as did customers.

42. Said negative comments were inappropriate not to mention unfair and unwarranted.

43. Barbara Paige and Mike Shanley seemed to have a close personal relationship insofar as Shanley would routinely refer to Paige in the workplace someone who was "like a girlfriend".

44. Rick Prest and Barbara Paige were working together insofar as, on information and belief, Barbara Paige's negative comments about Plaintiff's work was done while logged into Rick Prest's account.

45. Rick Prest was known to tell Technicians that he had "spies" on the manufacturing floor, and it was widely known that Paige was one such "spy".

46. Working together, Prest and Paige sabotaged Plaintiff ability to satisfy his PIP with the negative comments on the database since said comments had a direct effect on Plaintiff's PIP performance.

47. Defendant – by and through Prest and Paige - retaliatorily sabotaged Plaintiff's ability to perform well, and to impede his ability to reach his performance goals set forth in his

PIP in a manner set forth above and as to be proven at or before trial.

48. On September 29, 2020, Barb Paige castigated Plaintiff – purportedly because of the quality of his work on a Heat Sink he was repairing, when in reality his repair work was beyond reproach.

49. Barb Paige used this allegation of poor work quality on the Heat Sink as a set up and proceeded to conspire with Mike Shanley, the HR Supervisor to make it a time-consuming issue which put Plaintiff behind in his efforts to keep up with the production quotas that had been created for him in the PIP, putting the milestones further out of reach and making it more likely that he would be fired.

50. On or about October 10, 2020, Barb Paige once again impeded Plaintiff's efforts to meet the requirements of his PIP when she called Mike Shanley down to the work area where Plaintiff had been repairing Heat Sinks, and proceeded to waste yet more time accusing Plaintiff of poor work quality when in fact she was incorrect, and that Plaintiff had properly diagnosed the problem with the Heat Sink at issue; however, the incident caused yet additional delays and made it literally impossible for Plaintiff to meet the production requirements of the PIP.

51. It is notable that during the foregoing incident on October 10, 2020, a fellow tech named "Nick" audibly confirmed that in fact Plaintiff had done nothing incorrect with respect to the repair of the Heat Sink in question, thus validating Plaintiff's assumption that he was being "set up to fail" in retaliation for having filed an Ethics Complaint and in retaliation for having filed a Complaint of age discrimination in the NYSDHR only about a month earlier.

52. Predictably, Defendant fired Plaintiff on or about December 2, 2020.

53. In addition to discriminating against Defendant on the basis of his age, and to retaliating against Plaintiff for engaging in lawful opposition to discrimination in the workplace,

8

Defendant also created a hostile work environment by manufacturing repeated false allegations against Plaintiff within the workplace, and by pitting other employees against plaintiff, and by repeatedly and pervasively cursing out and yelling at Plaintiff about his workmanship and by micromanaging his every move at his job in a manner that made it literally impossible to thrive or to meet the requirements of his PIP.

54. The unlawful employment practices complained of above were intentional and malicious.

55. The anxiety, stress and emotional distress that resulted from the foregoing discrimination and retaliation and hostile work environment persists to the date of the instant Complaint.

56. The unlawful employment practices complained of herein above were intentional, and malicious in nature for which L3Harris should be forced to pay damages as well as punitive damages to Plaintiff in an amount to be determined for the emotional trauma suffered.

57. The unlawful employment practices complained of herein above were done with malice or with reckless indifference to the federally protected rights of Plaintiff, who was harassed, and discriminated against due to his age and who was retaliated against for lawfully opposing discrimination in the workplace.

58. The present Complaint shall have been filed in the Federal District Court, Western District of New York, fewer than 90 days after receiving the two Right To Sue letters from the Equal Employment Opportunity Commission.

59. As a direct and proximate result of Defendant's discrimination, retaliation and harassment against Plaintiff, and notwithstanding Plaintiff's duty to attempt in good faith to mitigate his damages, Plaintiff has suffered damages in an amount to be determined at trial,

9

including, but not limited to, significant lost wages and future wages, lost value of fringe benefits, and other forms of compensation, as well as the loss of a career with L3Harris, in amounts yet to be determined, but which exceed the minimum amount required to be in controversy within the present court.

**Count I. Age Discrimination in violation of ADEA.**

Defendant discriminated against Plaintiff in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") when it subjected Plaintiff to adverse employment action because of his age, for which Plaintiff is entitled to monetary relief.

**Count II. Age Discrimination in violation of NYS Human Rights Law.**

Defendant discriminated against Plaintiff in violation of N.Y. Exec. Law, art. 15 (Human Rights law) when it subjected Plaintiff to adverse employment action because of his age, for which Plaintiff is entitled to monetary relief.

**Count III. Retaliation in violation of NYS Human Rights Law.**

Defendant retaliated unlawfully against Plaintiff in violation of N.Y. Exec. Law, art. 15 (Human Rights law) when it fired Plaintiff for opposing age discrimination and harassment in the workplace for which Plaintiff is entitled to monetary relief.

**Count IV. Retaliation in violation of ADEA.**

Defendant retaliated unlawfully against Plaintiff in violation of the ADEA when it fired Plaintiff for opposing age discrimination and harassment in the workplace for which Plaintiff is entitled to monetary relief.

**Count V, VI and VII. Hostile Work Environment.**

Defendant created a hostile work environment in violation of N.Y. Exec. Law, art. 15 (Human Rights law), Title VII of the Civil Rights Act of 1964 and the ADEA when it condoned

pervasive and outrageous harassment in the workplace based on Plaintiff's age and in retaliation for lawfully opposing discrimination, for which Plaintiff is entitled to monetary relief.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or terminating qualified individuals from employment due to age.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful age discrimination or retaliation.

C. Order Defendant Employer to make whole James Clarke by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole James Clarke by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole James Clarke by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the harassment and discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay punitive damages so as to punish Defendant for its malicious and intentional acts as outlined in the foregoing Complaint.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S://  James D. Hartt
**JAMES D. HARTT, ESQ.,
Attorney For Plaintiff-Admitted to
Practice in WDNY Federal Court
6 N. Main Street, Suite 200-F
Fairport, NY 14450
Telephone: (585) 490-7100
Fax: (716) 299-2006**

ORIGINAL of the foregoing was
filed this 26th Day of July with:
The Clerk of the Federal District Court
Western District New York District, Rochester Division